**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**BRENDA WREN** **PLAINTIFF**

**V.** **3:09CV00118 JMM**

**KEVIN TUCKER, Individually and in his Official Capacity as a Police Officer for Blytheville, Arkansas; ROSS THOMPSON, Individually and in his Official Capacity as Chief of Police for Blytheville, Arkansas; CITY OF BLYTHEVILLE, ARKANSAS** **DEFENDANTS**

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Pending is the Motion for Summary Judgment filed by the Defendants. The Plaintiff has responded. For the reasons set forth below, the Motion is GRANTED.

I. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. "Summary judgment is appropriate if the record, when viewed in [the] light most favorable to the non-moving party, shows no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Marshall v. UNUM Life Ins. Co.*, 13 F.3d 282, 283 (8th Cir.1994) (citing *Richmond v. Board of Regents*, 957 F.2d 595, 597 (8th Cir. 1992)). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there

> is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

II. Facts

At 10:48 p.m. on January 3, 2009, the Plaintiff called 911 and advised that "her husband is trying to hit her." Def.'s Mot. Summ. J., Exhibit A, ECF No. 28-1. Officer Kevin Tucker (Unit 525) was dispatched to the Plaintiff's residence; the Plaintiff shared this residence with her

husband, Gary Wren. *Id.* Officer Tucker arrived on scene at 10:52 p.m. *Id.* Upon his arrival, Officer Tucker was let in the house by Mr. Wren and asked Wren "where his wife was because she was the caller. I wanted to make sure she was okay." Pl.'s Resp., Tucker's Dep. 22:11-13, ECF No. 32. Officer Tucker proceeded to the bathroom, where the Plaintiff was, and spoke to her about the incident. *Id.* at 22:14-15. Officer Tucker stated in his deposition:

> As I get close, I smell some intoxicants coming from her area. I asked her if she's okay and what's goin' on. And she begins to tell me that her and Gary had gotten into a fight and that he'd been throwing things at her, yelling and screaming at her. And he had gotten mad and was throwing things around the house and then was hitting her with the things that he had been throwing. And I asked her if she was hurt or anything and, you know, she held out her arms, like this, (indicating), and I shined my flashlight on her arms and I noticed no injury, no redness, no swelling, no bleeding, nothing.

*Id.* at 23:17–25; 24:1–5.

After speaking with the Plaintiff, Officer Tucker returned to the other room and spoke with Wren. *Id.* at 25:3-10; Def's Mot. Summ. J., Exhibit C. Wren stated that he and the Plaintiff "had been arguing verbally . . . [and] [the Plaintiff] then got into his face and started slapping and scratching him." *Id.* Wren stated that at that time he "grabbed [the Plaintiff] to keep her from hitting him any further." *Id.* Officer Tucker then looked at both the Plaintiff and Wren for signs of injury. *Id*. The Plaintiff had no visible signs of injury, but Wren showed Officer Tucker "scratch marks on the left side of his neck goin' down to the top of his chest." Pl.'s Resp., Tucker's Dep. 25:7-10. There were three scratch marks, twelve to fifteen inches long. *Id.* at 25:15-16; 26:24-25, 27:1.

The Plaintiff does not dispute that she scratched Wren. Pl.'s Resp., Pl's Dep 47:25;48:1-4. 14, ECF No. 35. Other than informing Officer Tucker that she and her husband had gotten into a fight and that her husband had thrown things at her (which the Plaintiff testified

was a pillow), the Plaintiff did not report to Officer Tucker any other acts of violence on the part of her husband. Tucker's Dep. at 22:17-25; Pl.'s Dep. at 15:1-2; 66:5-8.

Based on the information he had received and because Wren had an injury and the Plaintiff had none, Officer Tucker determined that the Plaintiff was "the primary aggressor." Tucker's Dep. at 26:4-6. Upon making that determination, Officer Tucker advised the Plaintiff that she was under arrest. *Id.* at 29. Because the Plaintiff was clothed in an oversized t-shirt and underwear, Officer Tucker told the Plaintiff to get her pants on. Tucker's Dep. at 29:24-25; Pl.'s Dep. at 59:19-20; Def's Mot. Summ. J., Ex. C. The Plaintiff did not take the opportunity to put on her pants. Pl.'s Dep. at 59:22-24.

Upon her arrest, the Plaintiff laid down on the floor as requested by Officer Tucker. Pl.'s Dep. at 61:12. Officer Tucker cuffed her hands behind her back. *Id.* at 61:20-25. Officer Tucker helped Plaintiff to her feet. *Id.* at 62:7. By this time, another Blytheville police officer, Matthew Huckabay, had shown up at the scene to provide back-up. *Id.* at 62:10-17. Officer Tucker then transported the Plaintiff to the Blytheville Police Department holding facility. Exhibit C. Officer Tucker did not have his emergency blue lights turned on during the transport. Tucker Dep. at 36:14.

Once at the Police Department, Officer Tucker pulled his vehicle into the sally port[1]. Officer Tucker's Dep. at 37: 8-9. Plaintiff was escorted into a holding cell at the Blytheville Police Department by Officer Tucker. *Id.* at 11-19. Plaintiff does not remember seeing anyone at the Police Department. Pl.'s Dep. at 72:24-25. Officer Tucker and Huckabay testified that

---

[1] "A sally port serves as a secure entryway into the prison." *Reynolds v. Dormire* 636 F.3d 976, 979 (8th Cir. 2011).

there were no other individuals in the holding cell with Plaintiff and no other detainees could see into the cell where Plaintiff was held. Officer Tucker's Dep. at 41:24-42:6. Plaintiff could only be seen by other detainees when she was taken to the cell or brought out of the cell. Officer Tucker, Dep. at 42: 7-9. And even then, the other detainees would have to make a concerted effort to stand and look out the windows of their cell to see Plaintiff as she walked past. Huckabay Dep. at 31:19-21. It took Plaintiff between ten to thirty seconds to get to the holding cell. Huckabay Dep. at 30-31. Plaintiff's underwear or genitals were never exposed. Tucker Dep. at 42:12-18; Pl.'s Dep. at 71:18-72:9.

At 4:40 a.m. the following morning, Officer Tucker transported the Plaintiff to the Mississippi County Detention facility. Def.'s Mot. Summ. J., Exhibit E. The Mississippi County Medical Form indicates that there was no evidence that the Plaintiff suffered any recent injury. *Id.* Plaintiff was given clothes and blankets at the county jail. Pl.'s Dep. at 74. Two female officers noticed bruises on Plaintiff's arm. Pl.'s Dep. at 79. After being released, Plaintiff filed a complaint against Officer Tucker with the Blytheville Police Department. Pl.'s Dep. at 84.

Plaintiff filed suit in the Circuit Court of Mississippi County, Arkansas on July 6, 2009. The Defendants removed the case to this Court on August 10, 2009, based upon federal question jurisdiction. *See* 28 U.S.C. § 1441(a). Plaintiff filed an Amended Complaint on May 19, 2011 against the Defendants alleging violations of her rights under the Fourth, Fifth, Sixth, and Eighth Amendments through 42 U.S.C. § 1983 and state law claims of unlawful arrest, defamation, negligence, and gross negligence. Plaintiff seeks compensatory and punitive damages.

III. Analysis of the Law

As the Defendants point out, Plaintiff cannot set forth a claim under the facts of this case for violations of her Fifth, Sixth or Eighth Amendment rights. The Due Process Clause of the Fifth Amendment to the United States Constitution provides that: "No person shall . . . be deprived of . . . property, without due process of law. . . ." It applies to actions of the federal government . *Warren v. Government Nat. Mortg. Ass'n*, 611 F.2d 1229, 1232 (8th Cir. 1980). There was no federal governmental action in this case. The Sixth Amendment "attaches 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *U.S. v. Ingle*, 157 F.3d 1147, 1151 (8th Cir. 1998) (quoting *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292 (1972)). Thus, the Sixth Amendment does not apply to this case. Plaintiff had been arrested but not formally charged. Finally, the Eighth Amendment does not apply here because the Eighth Amendment applies to complaints filed by individuals after they are sentenced. *See Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("[T]he Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences.") The Court notes that Plaintiff cites frequently in her Response to cases applying the Fourteenth Amendment, however Plaintiff did not make a claim under the Fourteenth Amendment in her Amended Complaint.

A. Fourth Amendment Claims

In the Motion for Summary Judgment, Defendants argue that Officer Tucker did not violate Plaintiff's Fourth Amendment rights. They also argue that, even if there was a constitutional violation, Officer Tucker is entitled to qualified immunity.

> Determining whether a state actor is entitled to qualified immunity involves two questions: First, did the official deprive the plaintiff of a constitutional or statutory right? If not, he does not need qualified immunity, as he is not liable under § 1983. If so, we ask the second question: Was that right so clearly established at the time that a reasonable official would have understood that his conduct was unlawful under the circumstances? *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the right was not clearly established, then the officer is protected by qualified immunity.

*Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). "The threshold inquiry in a qualified immunity analysis decided on a motion for summary judgment is whether the plaintiff has alleged facts sufficient to establish a constitutional violation." *Hill v. McKinley,* 311 F.3d 899, 902 -903 (8th Cir. 2002) (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed. 2d 666 (2002)).

In this case, Plaintiff claims that her Fourth Amendment rights were violated in two ways: use of excessive force and violation of her privacy. First, Plaintiff claims that Officer Tucker used excessive force when he "took [her] down" and handcuffed her when there was no need to do so. In her deposition, Plaintiff testified that Officer Tucker *told* her "to lay face down on the floor" and she complied. Pl.'s Dep. at 61:12,18. Viewing the facts in the light most favorable to Plaintiff, the Court finds no evidence of excessive force by Officer Tucker in conducting Plaintiff's arrest.

Plaintiff also alleges that Officer Tucker's seizure was unreasonable because she was arrested and taken to the detention facility clothed only in a t-shirt and underwear. She was left in the holding cell for five hours before being transported to the county jail where she was given clothes and blankets. Plaintiff argues this was a violation of her Fourth Amendment right to privacy.

Plaintiff admits in her deposition that Officer Tucker told her to put on pants before being

arrested. Pl.'s Dep. at 59:19-20. Plaintiff stated she opted to sit on her bed "to clearly show that [she] was defusing the situation." *Id.* at 59:22-24. She states that Officer Tucker came back to her room and brought her into the living room and arrested her. *Id.* at 59-60. There is no evidence that Plaintiff asked Officer Tucker if she could put more clothes on before being transported. Plaintiff also admits that neither her underwear nor her genitals were exposed at any time. Pl.'s Dep. at 71:18-72:9. Plaintiff was arrested around 11:00 p.m. and she was provided with clothes and blankets by morning. Pl.'s Dep. at 74-75, 98.

In *Hill v. McKinley*, 311 F.3d 899 (8th Cir. 2002), the Eighth Circuit found that the defendant jail guards and sheriff violated a female detainee's Fourth Amendment right to privacy by keeping her naked body strapped to a restrainer board in a spread-eagle position in the presence of male officers for three and one-half hours. "[W]e hold that Hill's Fourth Amendment rights were violated when the defendants allowed her to remain completely exposed to male guards for a substantial period of time after the threat to security and safety had passed.." *Id*. at 904. However, the Eighth Circuit found other circumstances of Hill's detention did not violate her Fourth Amendment right to privacy, such as requiring the unruly detainee to disrobe in front of male officers before placing her in a padded cell and having male officers transfer the naked detainee from the padded cell to the exercise room.

The Court finds that the circumstances of Plaintiff's arrest and detention did not violate her Fourth Amendment right to privacy. Plaintiff was not stripped of her clothing. Plaintiff's genitals were covered at all times. The evidence shows that the only people who even knew that Plaintiff was at the city jail were Officer Tucker, Officer Huckabay, and two police dispatchers. Plaintiff was placed in a private cell. She was transported to the county jail by Officer Tucker

and she was given clothes and blankets shortly after her arrival. There is no evidence that Plaintiff was seen by anyone at either facility except the facility employees. Of further significance is the fact that Officer Tucker told Plaintiff to put on her pants and she failed to do so.

Moreover, even if the Court found this incident established a constitutional violation, the Court finds that Officer Tucker would be entitled to qualified immunity. A reasonable officer under the same circumstances as Officer Tucker would not be on notice that his conduct was unlawful in light of Eighth Circuit precedent in *Hill*. *See also Timm v. Gunter*, 917 F.2d 1093, 1102 (8th Cir. 1990) ("[w]hatever minimal intrusions on an inmate's privacy may result from [opposite-sex] surveillance, whether the inmate is using the bathroom, showering, or sleeping in the nude, are outweighed by institutional concerns for safety and equal employment opportunities").

Because there is no underlying constitutional violation by Officer Tucker, Plaintiff's constitutional claims against Ross Thompson and the City of Blytheville must also be dismissed. *See Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011*)* (Because Moore failed to establish Officer Malady violated Moore's constitutional rights, Moore cannot maintain this action against either Chief Bullock or the city."); *Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir.1994) ("The City cannot be liable ... whether on a failure to train theory or a municipal custom or policy theory, unless [an officer] is found liable on the underlying substantive claim").

B. State Law Claims

After dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(a), (c); *Crest Const. II,*

*Inc. v. Doe,* 660 F.3d 346, 359 (8th Cir. 2011) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

IV. Conclusion

Defendants' Motion for Summary Judgment (Docket # 26) is GRANTED as to Plaintiff's constitutional claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The Clerk is directed to close the case. The trial set for the week of March 12, 2012 is cancelled.

IT IS SO ORDERED this 6th day of February, 2012.

James M. Moody
United States District Judge